# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ESSEX INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 14-cv-04572 |
| ) | |
| VILLAGE OF OAK LAWN, TODD TENISON, ) | |
| and SCOTT KIRK, ) | |
| ) | |
| Defendant. ) | |
| ──────────────────────────────────── ) | |
| VILLAGE OF OAK LAWN, TODD TENISON, ) | |
| and SCOTT KIRK, ) | |
| Third Party Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| CANNON COCHRAN MANAGEMENT ) | |
| SERVICES, INC., ) | |
| Third Party Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

The history underlying this action includes various lawsuits filed in both state and federal court. In December of 2010, Mr. Petrishe, Ms. Caputo-Petrishe, and Ms. McGann filed a lawsuit against Defendants Village of Oak Lawn ("Oak Lawn"), Todd Tenison ("Defendant Tenison"), and Scott Kirk ("Defendant Kirk") arising out of injuries sustained by Mr. Petrishe related to Defendants Tenison and Kirk's response to the aftermath of a domestic disturbance (the "Underlying Action"). (R.37, ¶¶ 1, 18-52.) The Underlying Action resulted in a settlement agreement between the parties with Defendants' portion of the settlement being paid by insurance companies—Essex Insurance Company ("Essex") and Illinois Union Insurance

Company, a part of the ACE Group ("ACE"). (*Id.*, ¶ 7, 13, 56.) Even though Essex paid a portion of the settlement in the Underlying Action, it simultaneously entered into a non-waiver agreement with Defendant Oak Lawn as to its rights and defenses under an excess liability policy Essex issued to Defendant Oak Lawn ("Essex Policy"). (*Id.*, ¶¶ 57, 58.) In December of 2014, Essex filed its Second Amended Complaint in a lawsuit against Defendants (the "Declaratory Action") seeking a declaration that Essex has no duty—under the Essex Policy—to indemnify Defendants for settlement of the claims asserted in the Underlying Action. (*Id.*, ¶ 1.)

Defendants subsequently—as Third Party Plaintiffs—filed a Third Party Complaint against Cannon Cochran Management Services, Inc. ("CCMSI" or "Third Party Defendant") alleging negligence and breach of contract related to claim management and indemnification. (*See* R.39.) CCMSI responded with its Answer, Affirmative Defenses, and Counterclaim asserting affirmative defenses that: (1) notice to Essex was timely; (2) CCMSI did not breach the Service Agreement; and (3) Oak Lawn was contributorily negligent. (*See* R.44.) In addition, CCMSI's Answer seeks a declaratory judgment that Oak Lawn breached the Service Agreement by failing to notify CCMSI of the existence of the Essex Policy and that CCMSI is entitled to indemnification from Oak Lawn for all claims, losses, liabilities, costs, damages and reasonable attorney's fees stemming from this breach. (*See* R.44, Counterclaim, ¶¶ 1-6.) Before the Court is Third Party Plaintiffs' Motion to Dismiss CCMSI's counterclaim pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (R.52.) For the reasons discussed below, the Court denies Third Party Plaintiffs' motion.

## BACKGROUND

Third Party Plaintiff Oak Lawn is an Illinois municipal corporation organized and existing under the laws of the State of Illinois. (R.39, ¶ 1; R.44, ¶ 1.)[1] Third Party Plaintiffs Tenison and Kirk were police officers employed by Oak Lawn on the date of loss. (R.39, ¶¶ 2, 3; R.44, ¶¶ 2, 3, 8.) Third Party Defendant CCMSI is an Illinois corporation with its principal place of business located in Vermilon Count, Illinois and a regional office in Cook County, Illinois. (R.39, ¶ 4; R.44, ¶ 4.) The Court has original jurisdiction over the Declaratory Action based on diversity between the parties and the amount in controversy exceeding $75,000. (*See* R.37, ¶¶ 2, 4-6; R.49, ¶¶ 2, 4-6.) The Court, therefore, has supplemental jurisdiction over Third Party Plaintiffs' claims pursuant to 28 U.S.C. § 1367 based on the Court's original jurisdiction over the claims in the Declaratory Action because they "derive from a common nucleus of operative fact," forming part of the same case or controversy. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 683 (7th Cir. 2014).

### I. The Underlying Action

On December 14, 2010, Mr. Petrishe, Ms. Caputo-Petrishe, and Ms. McGann filed an action in this District relating to injuries sustained by Mr. Petrishe, when Defendant Kirk shot him multiple times after responding to a domestic disturbance. (R.37, ¶¶ 18, 20.) A few days earlier, on December 8, 2010, Mr. Petrishe was at his home in Oak Lawn, "feeling depressed, and drinking some beer" when he began arguing with his wife, Ms. Caputo-Petrishe. (*Id.*, ¶ 21.) Ms. Caputo-Petrishe called her mother, Ms. McGann, who came to the home and tried to calm

---

[1] For purposes of Third Party Plaintiffs' motion to dismiss CCMSI's counterclaim, the Court must assume the truth of the facts alleged in the counterclaim, construe allegations liberally, and view them in the light most favorable to the counterclaim plaintiff—here, CCMSI. *See Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005); *Cozzi Iron & Metal v. U.S. Office Equip., Inc.,* 250 F.3d 570, 574 (7th Cir. 2001). The Court references additional pleadings in the case for the purpose of providing much-needed context.

Mr. Petrishe. (*Id.*, ¶ 22.) Ms. Caputo-Petrishe then called both the Oak Lawn Police Department and Mr. Petrishe's Alcoholics Anonymous sponsor to inform them that Mr. Petrishe was acting suicidal and cutting himself. (*Id.*, ¶¶ 20-24.) Defendants Kirk and Tenison responded and an altercation ensued resulting in Defendant Kirk firing several gun shots at Mr. Petrishe. (*Id.*, ¶¶ 24-27.) Charges were subsequently filed against Mr. Petrishe for two counts of attempted first degree murder and misdemeanor aggravated assault. (*Id.*, ¶¶ 29, 30.) Following a bench trial in the Circuit Court of Cook County, Illinois, the judge found Mr. Petrishe not guilty on all counts against him. (*Id.*, ¶ 37.) In their Second Amended Complaint, Mr. Petrishe, Ms. Caputo-Petrishe, and Ms. McGann sought compensatory and punitive damages and alleged claims including asserted violations under 42 U.S.C. § 1983, failure to intervene, deprivation of constitutional due process rights, assault, false imprisonment, malicious prosecution, intentional infliction of emotional distress, abuse of process, loss of consortium, vicarious liability, and negligent training and supervising of Defendants Kirk and Tenison. (*Id.*, ¶¶ 1, 32-50.)

## II. Settlement of Underlying Action

After participating in a settlement conference by all parties to the Underlying Action and the Declaratory Action, the parties in the Underlying Action reached a $3,000,000.00 settlement. (R.37, ¶¶ 53, 54.) The insurance carriers, Essex and ACE, paid the settlement. (*Id.*, ¶ 56.) Specifically, Essex paid $1,000,000.00 and ACE paid $2,000,000.00. (*Id.*) As alleged by Essex, a condition precedent to Essex's agreement to pay a portion of the settlement of the Underlying Action was the entry by Essex and Oak Lawn into a Non-Waiver Agreement. (*Id.*, ¶ 57; R.37, Ex. A, Non-Waiver Agreement.) Essex alleges that under the Non-Wavier Agreement, Oak Lawn agreed that Essex's payment of a portion of the settlement in the Underlying Action would not be deemed to be a waiver or estoppel against Essex's rights and defenses under the Essex

4

Policy. In addition, Essex asserts that the Non-Waiver Agreement specifically preserved Essex's right to seek reimbursement from Oak Lawn for amounts paid in satisfaction of the settlement of the Underlying Action, subject to certain limitations and conditions. (*Id.*, ¶ 58.)

## III. The Agreements[2]

### A. Essex Insurance Policy

Essex issued an Excess Liability insurance policy to Oak Lawn for the one-year period running from March 15, 2010 through March 15, 2011 ("the Essex Policy"). (R.37, ¶ 7; R.44, ¶ 7; R.6-1, at 4.) The Essex Policy includes an insuring agreement whereby Essex "hereby agrees to pay on behalf of [Oak Lawn] that portion of Ultimate Net Loss in excess of the limits of Underlying Insurance …" (R.37, ¶ 8; *see also id.*, ¶¶ 12-17 (addressing policies identified as "Underlying Insurance"); R.6-1, at 23.) The Essex Policy defines "Ultimate Net Loss" as "the total amount of damages for which [Oak Lawn] is legally liable in payment of 'bodily injury', 'property damage', 'personal injury', or 'advertising injury.'" (R.37, ¶ 10; R.6-1, at 23.) The Essex Policy also defines "Underlying Insurance" as "the policy or policies listed in Item 4, of the Declarations." (R.37, ¶ 10; R.6-1, at 23.) The Essex Policy also had a notice provision which stated:

> 3. Duties in the Event of Accident, Occurrence, Claim or Suit
>
> You must see to it that we or our authorized representative and your underlying insurers:
> a. are notified as soon as practicable of any accident or occurrence which may result in a claim if the claim may involve this policy or any underlying insurance ;
> b. receive notice of the claim or suit as soon as practicable. …

(R.44, Affirmative Defenses, ¶ 2; R.6-1, at 24.)

---

[2] An additional policy between ACE and Oak Lawn is alleged in the Underlying Action ("ACE Policy"). (*See* R.37, ¶¶ 13-17.) Because the ACE Policy is not a subject of dispute in the Third Party Complaint, however, the Court does not address it here.

### B. The Service Agreement

CCMSI is an independent third party administrator providing self-insured property and casualty claims management services across the country. (R.44, ¶ 5.) Oak Lawn and CCMSI entered into a written Service Agreement on or about July 15, 2007 ("Service Agreement"). (*Id.*, ¶¶ 6, 18, 42.) As of January 28, 2015, neither Oak Lawn nor CCMSI has terminated the Service Agreement. (*Id.*, ¶ 20.) Pursuant to the Service Agreement, CCMSI agreed to provide independent third party claim management and administration services for all Oak Lawn's claims that occur during the period of the Agreement. (R.39, ¶¶ 18, 21; R.44, ¶¶ 18, 21.) The "Claim Management and Administration" provision of the Service Agreement provides:

> In compliance with its Best Practices, CCMSI will manage and administer all claims of [Oak Lawn] that occur during the period of this Agreement. All claim payments shall be made with [Oak Lawn] funds. CCMSI will act on behalf of [Oak Lawn] in handling, monitoring, investigating, overseeing and adjusting all such actual and alleged claims.

(R.39, ¶ 21; R.44, ¶¶ 18, 21; R.39-1, Service Agreement, at 1.) In addition, the Service Agreement contains a clause entitled "Indemnification by CCMSI" which states:

> CCMSI agrees that it will indemnify and hold harmless [Oak Lawn and Oak Lawn's] trustees, directors, officers, employees, agents, shareholders, subsidiaries, members, or other affiliates from and against any and all claims, losses, liability, costs, damages and reasonable attorney's fees incurred by [Oak Lawn] as the result of breach of this Agreement by CCMSI or misconduct, error or omissions by CCMSI, or by any of CCMSI's directors, officers, employees, agents, shareholders, subsidiaries or other affiliates in connection with the performance of this Agreement.

(R.39, ¶ 22; R.44, ¶ 22; R.39-1, at 5.) The Service Agreement also contains a provision directed to Oak Lawn's responsibility for furnishing CCMSI with insurance policy information. Under the Service Agreement, "[Oak Lawn] agrees to: … 5. Provide a complete copy of current excess or other insurance policies, including endorsements and audits, applicable to [Oak Lawn's] self insurance program." (R.44, Affirmative Defenses, ¶ 11; R.39-1, at 4-5.)

6

## IV. Notice of the Claim

On December 15, 2010, a Liability Supervisor from CCMSI sent an email to the Oak Lawn Village Manager with the subject line "Nikki Caputo-Petrishe on behalf of Charles Petrishe v. Oak Lawn Officers, Q&H File: Pending" (R.39-2, Email Correspondence; R.44, ¶ 24.) The email indicated that CCMSI had assigned a claim number for the incident and that "plaintiff's allegations trigger the Village's [Oak Lawn's] professional law enforcement liability policy, which is a claims-made policy. Therefore, I will be placing the insurance carrier on notice of this incident immediately." (R.39-2; R.44, ¶ 24.) CCMSI provided notice to ACE shortly after the date the Underlying Action was filed—December 14, 2010. (R.44, ¶ 25.)

Essex alleges in the Declaratory Action that CCMSI did not provide notice of the Underlying Action to Essex on or about December 15, 2010. (*Id.*, ¶ 26.) Essex further alleges that it did not receive notice of the Underlying Action until May 21, 2013. (*Id.*, ¶¶ 12, 27.) Essex also alleges that Oak Lawn breached the notice provision of the Essex Policy and that, as a result, Essex seeks a declaration that it has no obligation to indemnify the Third Party Plaintiffs for the claims asserted in the Underlying Action. (*Id.*, ¶ 13.) Third Party Plaintiffs deny that they breached the notice provision of the Essex Policy, and contend that Essex has a duty to indemnify them. (*Id.*, ¶ 14.) Third Party Plaintiffs further allege that if the Court determines that Oak Lawn breached the notice condition of the Essex Policy, and that Oak Lawn must reimburse all or part of the Essex settlement payment in the Underlying Action, then CCMSI is responsible to Oak Lawn because the Service Agreement obligated CCMSI to provide timely and adequate notice of the underlying claim to Oak Lawn's insurance carriers, including Essex. (R.39, ¶ 15.)

7

## V. CCMSI's Affirmative Defenses & Counterclaim

CCMSI denies it is responsible to Oak Lawn for any amount and denies that it breached any obligation, contractual or otherwise, to Oak Lawn to provide notice to Essex. (R.44, ¶ 15.) Specifically, CCMSI asserts three affirmative defenses: (1) notice to Essex was timely, (2) any subsequent breach by CCMSI is excused due to Oak Lawn's prior breach, and (3) Oak Lawn was contributorily negligent. (R.44, Affirmative Defenses.) First, CCMSI asserts that notice to Essex was timely because neither Oak Lawn nor CCMSI reasonably believed that the Underlying Action would involve either the underlying insurance or the Essex policy until February 2013. (*Id.*, ¶¶ 3-4.) In addition, CCMSI alleges that in January of 2013, Oak Lawn's primary insurer, ACE, was considering closing its file because it did not appear its policy would be implicated given the likelihood of Mr. Petrishe's conviction and the sufficiency of Oak Lawn's $150,000 SIR. (*Id.*, ¶ 6.) Neither CCMSI nor Oak Lawn believed that the claim would implicate the Essex Policy until after the judge acquitted Mr. Petrishe and after Mr. Petrishe made his demand to settle the claims against Oak Lawn. (*Id.*, ¶ 9.) Second, CCMSI further asserts an affirmative defense that it is excused from liability due to any breach because Oak Lawn breached the Service Agreement first. (*Id.*, ¶¶ 11-14.) In particular, CCMSI alleges that Oak Lawn breached the Service Agreement when it failed to inform CCMSI about the existence of the Essex Policy or to provide CCMSI with information or details regarding the Essex Policy until March of 2013. (*Id.*, ¶ 12.) Once advised of the Essex Policy, CCMSI alleges that it provided notice to Essex on behalf of Oak Lawn as soon as practicable thereafter. (*Id.*, ¶ 13.) Lastly, CCMSI alleges that Oak Lawn was contributorily negligent related to its retention of defense counsel responsible for evaluating liability and damages related to the claim alleged in the Underlying Action. (*Id.*, ¶¶ 15-16.) CCMSI asserts that defense counsel informed Oak Lawn

and CCMSI that the Underlying Action would likely "go away" if the court convicted Mr. Petrishe (April 2011), that defense counsel did not anticipate the matter to exceed the $150,000 SIR (August 2011) and that as of November 2012, Mr. Petrishe's criminal charges had not yet been resolved. (*Id.*, ¶ 17.) Both CCMSI and Oak Lawn were copied on correspondence with defense counsel and at no time prior to February 2013 did defense counsel indicate that the claim in the Underlying Action would exceed the $150,000 SIR. (*Id.*, ¶¶ 19-20.)

CCMSI's counterclaim alleges that CCMSI and Oak Lawn entered into a Service Agreement requiring Oak Lawn to provide CCMSI with complete copies of current excess or other insurance policies and that Oak Lawn never provided CCMSI with a copy of the Essex Policy. (R.44, Counterclaim, ¶¶ 1-4.) In addition, CCMSI alleges that under the Service Agreement, Oak Lawn "agrees that it will indemnify and hold harmless CCMSI … against any and all claims, losses, liability, costs, damages and reasonable attorney's fees incurred by CCMSI as a result breach of [the Service Agreement] by [Oak Lawn] … in connection with performance of this Agreement." (*Id.*, ¶ 3; R.39-1, at 6.)

## LEGAL STANDARD

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). "In reviewing a motion to dismiss a counterclaim, the Court must assume the truth of the facts alleged in the

9

counterclaim, construe allegations liberally, and view them in the light most favorable to the counterclaim plaintiff. *See Centers v. Centennial Mortg., Inc.,* 398 F.3d 930, 933 (7th Cir. 2005); *Cozzi Iron & Metal v. U.S. Office Equip., Inc.,* 250 F.3d 570, 574 (7th Cir. 2001); *see also Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013); *Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC,* 741 F.3d 819, 823 (7th Cir. 2014). At the 12(b)(6) stage, the Court considers the exhibits attached to the complaint, but where an exhibit conflicts with the allegations of the complaint, the exhibit typically controls. *Centers,* 398 F.3d at 933. "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). Here, the relevant "complaint" is CCMSI's counterclaim. The Court may consider extrinsic exhibits if the documents are both referred to in the complaint and are also central to the ... claims." *Swanson v. Bank of Am., N.A.,* 566 F.Supp.2d 821, 823 (N.D. Ill. 2008) (citing *Tierney v. Vahle,* 304 F.3d 734, 738–39 (7th Cir. 2002)); *see also* Fed. R. Civ. P. 12(d). To be considered at the 12(b)(6) stage, the documents must also be indisputably authentic. *Swanson*, 566 F.Supp.2d at 823. Those documents attached to and referenced in Plaintiff's Complaint in the Underlying Action and Third Party Plaintiffs' Complaint are referenced in CCMSI's counterclaim and are central to the claims. The parties do not challenge the authenticity of any of the relevant documents. The Court will accordingly consider them.

## ANALYSIS

Third Party Plaintiffs essentially provide a single argument in support of their motion to dismiss—asserting that CCMSI's counterclaim is redundant with Third Party Plaintiffs' claims and with CCMSI's second affirmative defense, making the counterclaim unnecessary. Conversely, CCMSI argues that its counterclaim is not redundant with the third party claims because: (1) it seeks relief under an entirely separate portion of the Service Agreement than

Plaintiffs' Third Party Complaint, and (2) although based on the same section of the Service Agreement as its second affirmative defense, it differs from the second affirmative defense in that it seeks indemnity for Oak Lawn's alleged breach of that portion of the Service Agreement. The Court agrees.

Although filed as a motion to dismiss under Rule 12(b)(6), Third Party Plaintiffs argue that CCMSI's counterclaim "is repetitious and unnecessary and should be stricken." (R.52, at 5.) This argument draws from Rule 12(f) which allows a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Indeed, the case that Third Party Plaintiffs' reference in support of their argument involved the court striking redundant counterclaims in response to the plaintiff's motion to strike. *See Green Bay Packaging, Inc. v. Hogansen & Assoc., Inc.*, 362 F.Supp. 78, 81-82 (N.D. Ill. 1973) (striking Counts I and III as redundant in response to plaintiff's motion to strike because "the issue will be determined by the litigation of the instant complaint).

While courts in this District also have dismissed counterclaims under Rule 12(b)(6) (*see e.g., Intercon Solutions, Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1067 (N.D. Ill. 2013); *LaSalle Bank Nat'l Assoc. v. Paramont Properties et al.*, 588 F.Supp.2d 840, 862 (N.D. Ill. 2008)), Third Party Plaintiffs focus their argument on striking the counterclaim and assert nothing more than a conclusory argument echoing the standards of Rule 12(b)(6) in a footnote. *See* R.52, at 6, n.2 (citing *Intercon Solutions, Inc.*, 969 F.Supp.2d at 1067) ("Even if not redundant, CCMSI's counterclaim like that in *Intercon Solutions, Inc.* 'contains little more than a few conclusory allegations and fails to allege any facts that would enable the court to draw a reasonable inference that it is entitled to the declaration [it] seeks.'") This skeletal footnote argument is undeveloped and is therefore waived. *See Hernandez v. Cook Cnty. Sheriff's Office*,

634 F.3d 906, 913 (7th Cir. 2011) ("It is well established in our precedents that 'skeletal' arguments may be properly treated as waived"); *see Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013) (citations omitted) ("We have often said that a party can waive an argument by presenting it only in an undeveloped footnote"). The Court, therefore, treats Third Party Plaintiff's motion as one to strike. Although it is appropriate for the court to strike allegations or defenses that add unnecessary clutter to a case, motions to strike are not favored and an allegation "must be so unrelated to the party's claims as to be devoid of merit and unworthy of any consideration." *Employer Ins. Of Wausau v. Pacer Int'l Inc.*, No. 04 C 4563, 2005 WL 61481, at *2 (N.D. Ill. Jan. 11, 2005) (citing *Heller Fin. v. Midwhey Powder Co.*, 883 F.2d 1286, 1295 (7th Cir. 1989) and *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991)). District courts have considerable discretion under Rule 12(f). *See Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141-42 (7th Cir. 2009).

      CCMSI's counterclaim is not redundant. The dispute between Third Party Plaintiffs and CCMSI boils down to allegations surrounding whether CCMSI was responsible for providing timely and adequate notice of the Underlying Action to Oak Lawn's insurance carrier—namely, Essex—and if responsible, whether it did provide timely and adequate notice. If the Court finds that Oak Lawn breached the notice provision of the Essex Policy disputed in the Underlying Action, then Essex contends that it had no obligation to indemnify Oak Lawn for the claims settled in the Underlying Action with Mr. Petrishe, Ms. Caputo-Petrishe, and Ms. McGann. Accordingly, Oak Lawn would then reimburse Essex the $1,000,000.00 settlement amount. As alleged in its Third Party Complaint, however, Oak Lawn denies it had responsibility for providing Essex with notice of the claims in the Underlying Action. Instead, Oak Lawn

contends that it relied on CCMSI to provide timely and adequate notice to Oak Lawn's insurance carriers.

CCMSI's counterclaim essentially alleges breach of the Service Agreement and a declaration of indemnification from Oak Lawn for all claims, losses, liabilities, costs, damages, and reasonable attorney's fees related to the alleged breach. Specifically, CCMSI's counterclaim asserts that Oak Lawn breached Section C.5 of the Service Agreement that requires Oak Lawn to provide a copy of current excess or other insurance policies applicable to Oak Lawn's self-insurance program and requests a declaration entitling CCMSI to indemnification for Oak Lawn's alleged breach. (*See* R.44, Counterclaim, ¶¶ 1-6; R.39-1, §§ C.5 and L.) Count I of the Third Party Complaint alleges that CCMSI breached Section B of the Service Agreement specifying CCMSI's duties and responsibilities, including "Claim Management and Administration." (R. 39, ¶¶ 29-33.) The relief that CCMSI seeks in its counterclaim is not redundant with this claim as the claims involve different provisions that specify different duties and responsibilities for different parties in the Service Agreement. CCMSI's counterclaim seeks relief under Section C of the Service Agreement, which outlines Oak Lawn's duties. Conversely, Oak Lawn's Third Party Complaint seeks relief under Section B of the Service Agreement, which outlines CCMSI's duties.

Similarly, CCMSI's counterclaim and second affirmative defense are not redundant. CCMSI's second affirmative defense claims that it should be excused from its contractual obligations because Oak Lawn breached Section C.5 of the Service Agreement when it failed to timely provide CCMSI with a copy of the Essex Policy. While CCMSI's counterclaim alleges breach of the same contractual provision (§ C.5), it does not rely on this provision for excuse of performance. Instead, CCMSI's counterclaim alleges that Oak Lawn is contractually obligated

13

to indemnify CCMSI for all claims, losses, liability, costs, damages and reasonable attorney's fees stemming from Oak Lawn's alleged breach—including for the actions taken in relation to the Third Party Complaint. (R.44, Counterclaim, ¶ 6.) CCMSI's additional request for indemnification includes a prayer for relief not contained within its affirmative defenses. Accordingly, CCMSI's counterclaim is not redundant with its second affirmative defense.

Courts in this District permit "an alleged insured to file counterclaims demanding a declaration that the insurer was obligated to make payments to or to defend the insured; these cases frequently assert breach of contract counterclaims based on the insurance policy, as well." *Continental Cas. Co. v. Duckson*, No. 11-CV-00459, 2011 WL 2293873, at *2 (N.D. Ill. June 9, 2011) (citations omitted) (finding the defendant's counterclaims seeking a declaratory judgment that the plaintiff owed him coverage and indemnification was not redundant with the plaintiff's own claim for declaratory judgment that the defendant was not covered under the policy); *see also e.g., Employer Ins. Of Wausau*, 2005 WL 61481, at *2 (refusing to dismiss, under Rule 12(f), the defendant's counterclaim as redundant, stating "[i]t is common practice for an alleged insured to file counterclaims demanding a declaration that the insurer was obligated to make payments to or to defend the insured; these cases frequently assert breach of contract counterclaims based on the insurance policy, as well"); *see also* 6 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1406 (2d ed. 2009) ("[ T]he safer course for the court to follow is to deny a request to dismiss a counterclaim for declaratory relief unless there is no doubt that it will be rendered moot by the adjudication of the main action"). CCMSI seeks to do nothing more than the insureds in the above cases—demand a declaration

that Oak Lawn's alleged breach of the Service Agreement obligates Oak Lawn to indemnify CCMSI for any of CCMSI's losses related to the Third Party Complaint.[3]

While CCMSI's counterclaim will address many of the same facts and legal issues raised by Third Party Plaintiffs' suit, CCMSI has a right to seek declaration that Third Party Plaintiffs' actions—specifically, Third Party Plaintiffs' actions related to its contractual duties specified in Section C of the Policy— constitute breach and result in Third Party Plaintiffs' indemnification of CCMSI and payment for CCMSI's related losses.[4] The Court, therefore, denies Third Party Plaintiffs' motion seeking to dismiss or strike CCMSI's counterclaim.

## CONCLUSION

For the reasons discussed in detail above, the Court denies Third Party Plaintiffs' motion to strike or dismiss Third Party Defendant's counterclaim.

**DATED:** April 28, 2015

ENTERED

_____
AMY J. ST. EVE
United States District Court Judge

---

[3] Third Party Plaintiffs have also not asserted they will suffer any prejudice by CCMSI's allegedly duplicative counterclaim. *See VW Credit, Inc. v. Friedman & Wexler, LLC*, No. 09 C 2832, 2010 WL 2330364, at *2 (N.D. Ill. June 7, 2010) ("In any event, even if the counterclaim turns out to be an exact mirror image of VW Credit's claim, which seems doubtful, the fact that the counterclaim remained pending ... would not prejudice VW Credit in the slightest").

[4] Although not addressed by either party, CCMSI's counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. Pro. 13(a)(1). Therefore, in such a case, before dismissal of the counterclaim, Third Party Plaintiffs would have to demonstrate that a determination of their claims obviates the need for CCMSI's declaratory relief. *See BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC,* No. 07-cv-186-DRH, 2010 WL 145792, at *2 (S.D. Ill. Jan. 12, 2010). Third Party Plaintiffs have not done so here.