**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ESSEX INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| VILLAGE OF OAK LAWN, TODD TENISON, and | ) |
| SCOTT KIRK, | ) |
| | )  No. 14-cv-4572 |
| Defendants. | ) |
| ——————————————————— | ) |
| | ) |
| VILLAGE OF OAK LAWN, TODD TENISON, and | ) |
| SCOTT KIRK, | ) |
| | ) |
| Third-Party Plaintiffs, | ) |
| v. | ) |
| | ) |
| CANNON COCHRAN MANAGEMENT SERVICES, | ) |
| INC., | ) |
| | ) |
| Third-Party Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court are cross-motions for summary judgment pursuant to Federal Rule of

Civil Procedure 56(a) with respect to Counts VIII and IX of the Second Amended Complaint.

(R.90). Specifically, Defendant Oak Lawn seeks a declaration that two provisions of the Essex

Policy—lack of an "occurrence" and a "dishonest acts" exclusion—do not apply here to bar

Plaintiff Essex's indemnity obligations.[1] Essex, in turn, "prays for the entry of an order granting

summary judgment in its favor . . . and ordering the Village of Oak Lawn to indemnify Essex in

---

[1] Capitalized terms not otherwise defined herein shall have the meaning as set forth in the
Court's Memorandum Opinion and Order, dated May 31, 2016, on CCMSI and Essex's cross-
motions for summary judgment. (R.125).

the amount of $1,000,000.00, plus interest." (R.131, Supp. Response Br. at 6; R.114, Essex Response Br. at 13). Accordingly, the Court construes Essex's response as a cross-motion for summary judgment on Counts VIII and IX.

The Court previously granted Third-Party Defendant CCMSI's motion for summary judgment in this case, finding that Oak Lawn did not breach the notice condition of Essex's insurance policy with respect to an underlying lawsuit. (R.125). The Court deferred ruling on the present cross-motions and requested supplemental briefing with respect to whether the underlying insurance policy—the ACE Policy—provides coverage for certain claims in that underlying lawsuit. (*Id.* at 2 n.1; R.123). After reviewing the parties' supplemental submissions, and for the following reasons, the Court grants Oak Lawn's motion for summary judgment and dismisses this case with prejudice. (R.90).

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "The mere existence of *some* alleged factual dispute will not defeat summary judgment." *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016) (quoting *Anderson*, 477 U.S. at 247-48).

In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (quotation omitted); *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 349 (7th Cir. 2015).

## BACKGROUND

In this action, Essex seeks a declaration that it has no duty to indemnify Defendants with respect to an action filed against them by Charles Petrishe, Nikki Caputo-Petrishe, and Dianne McGann in the United States District Court for the Northern District of Illinois, captioned *Nikki Caputo-Petrishe et al. v. Oak Lawn Police Officers Todd Tenison and Scott Kirk et al.*, 1:10-cv-7950 (the "Underlying Action"). (R.101, Essex Rule 56.1(a)(3) Stmt. Facts ¶¶ 6, 19; *see also* R.37, Second Am. Compl. ¶ 1). The Underlying Action resulted in a $3 million settlement agreement between the parties, with Defendants' two insurance companies—Essex and non-party ACE—paying out $1 million and $2 million, respectively. (R.101, Essex Rule 56.1(a)(3) Stmt. Facts ¶¶ 35-37).

Essex now seeks to recoup that $1 million payment, along with applicable interest, pursuant to a Non-Waiver Agreement that it entered into with Oak Lawn as a condition precedent to settlement. (*Id.* ¶¶ 8, 38-39; R.37, Second Am. Compl. at Prayer for Relief; R.37-A, Non-Waiver Agreement). The Non-Waiver Agreement provides, in relevant part, that Essex's contribution to the underlying settlement "is without prejudice, shall not be deemed a waiver or estoppel against Essex of its rights and defenses under the Essex Policy, and shall not be otherwise used against Essex in any action," including this action. (R.37-A, Non-Waiver Agreement at ¶ 2).

## I.  The Underlying Action[2]

The original complaint in the Underlying Action alleged that, on December 8, 2010, Defendants Tenison and Kirk responded to a 911 call placed by one of the plaintiffs, Nikki Caputo-Petrishe, informing them that her husband, Charles Petrishe ("Petrishe"), was acting suicidal by cutting himself with a kitchen knife.  (R.101-5, *Petrishe* Compl. at ¶¶ 10-12).  Officers Kirk and Tenison entered the Petrishe home without first speaking to Caputo-Petrishe and, once there, observed Petrishe standing ten feet away, with his arms raised and a knife in one hand.  (*Id.* ¶ 13).  The *Petrishe* Complaint continued:

> Tenison then fired his taser at Petrishe.  Kirk then fired four gun shots at Petrishe.  The first bullet hit Petrishe and entered through his torso, tearing apart his spleen and gall bladder and lodging near his spine.  As Petrishe fell to the ground, the second bullet went through Petrishe . . . As Petrishe laid on the ground, two more bullets went through Petrishe's upper body . . . All told, these four bullets damaged every vital organ except Petrishe's heart, tore apart his duodenum sac, and tore open his pericardium sac.

(*Id.* ¶ 14).  .  Later that night, the police informed Petrishe's family that he was under arrest for the attempted murder of Officers Tenison and Kirk (*Id.* ¶ 16).  According to Defendants, Petrishe "charged" at the individual officers with his knife, thus justifying their use of force and supporting the filing of criminal charges.  (R.98, CCMSI Rule 56.1(a)(3) Stmt. Facts ¶ 9).[3]

---

[2]  The May 2016 Opinion provides additional background on the Underlying Action.  (R.125).

[3]  Defendants attach a claim note from CCMSI's liability supervisor, dated July 14, 2011, describing the video footage of the incident.  (R.98-1 at CC 00011).  This description provides: "The video begins when the officer's taser charges. The plaintiff is then tased.  There was a lot of yelling.  When the taser plug comes detached from the plaintiff, he picked up the knife and put it over his head.  The officers then immediately shot the plaintiff.  [Defense counsel] advised his only concern is that there was no time for the plaintiff to react to the instructions.  The shots were fired immediately when the plaintiff picked up the knife."  (*Id.*).  A later-dated claim note describes police reports, reciting that, after he was tased, "Petrishe took several steps to his right and then raised the knife in his right hand above his head like a baseball pitcher to throw a pitch. Kirk then fired several shots at Petrishe who threw the knife before collapsing."  (*Id.* at CC 00024-25).

On January 12, 2011, the *Petrishe* plaintiffs moved to stay the Underlying Action pending the related criminal proceedings against Petrishe. The district court granted the stay request. (R.101, Essex Rule 56.1(a)(3) Stmt. Facts ¶ 32). The criminal prosecution lasted from early 2011 through February 2013. On February 1, 2013, the criminal court acquitted Petrishe of all charges. (*Id.* ¶ 34). On March 14, 2013—after two years and the completion of the criminal case—the district court lifted the stay in the Underlying Action. (*Id.*).

On April 11, 2013, the *Petrishe* plaintiffs filed a Third Amended Complaint. (R.101, Essex Rule 56.1(a)(3) Stmt. Facts ¶ 33; *see also* R.92-1, Third Am. Compl.).[4] CCMSI notified Essex of the Underlying Action on May 21, 2013. (*Id.* at ¶¶ 46-47). Essex subsequently filed this declaratory judgment action on June 17, 2014. (R.1, Complaint). Essex, however, participated in settling the Underlying Action on behalf of the Village, including with respect to the September 23, 2014 settlement conference, during which "all parties to the present action and the Underlying Action" agreed to "settle the Underlying Action for $3,000,000." (R.111 Essex Rule 56.1(b)(3)(B) Stmt. Facts ¶ 20).

---

[4] The Third Amended Complaint recites sixteen claims. Claims 1-5 assert federal claims against the individual officers, Tenison and Kirk. Claims 6-13 assert state law claims, some against all defendants, and some against the individual officers alone. Claim 14 asserts a *respondeat superior* claim against the Village for the underlying state law claims. Claim 15 asserts a claim for negligent training and supervision against the Village. Claim 16 asserts a statutory indemnity claim against the Village for the underlying federal claims. (*See* R.92-1, Claim 1: Unreasonable Seizure (Taser); Claim 2: Excessive Force (Shooting); Claim 3: Failure to Intervene (Tenison); Claim 4: Due Process Violation; Claim 5: Conspiracy to Interfere with Due Process Rights; Claim 6: Battery; Claim 7: Assault; Claim 8: Malicious Prosecution; Claim 9: Intentional Infliction of Emotional Distress (Petrishe); Claim 10: Abuse of Process; Claim 11: Intentional Infliction of Emotional Distress (Caputo-Petrishe); Claim 12: Loss of Consortium (Caputo-Petrishe); Claim 13: Intentional Infliction of Emotional Distress (McGann); Claim 14: Respondeat Superior Liability for State Law Claims; Claim 15: Negligent Training and Supervision; Claim 16: Indemnity – 745 ILCS 10/9-102).

On November 14, 2014, the parties to the Underlying Action filed a Stipulation to Dismiss. (R.92, Village Rule 56.1(a)(3) Stmt. Facts ¶ 11; *see also* R.92-2, Stipulation to Dismiss). The district court dismissed the Underlying Action on November 17, 2014. (*Id.* at ¶ 12). In December 2014, Essex and the Village executed the Non-Waiver Agreement. (R.37-A). Essex now seeks to recoup its $1 million settlement payment pursuant to the Non-Waiver Agreement. (*See generally* R.37, Second Am. Compl.).

## II.    The Policies

This case concerns the interpretation of two insurance policies issued to Oak Lawn. The Court sets forth each policy below.

### A.    The ACE Policy

First, ACE issued to Oak Lawn Public Entity Retained Limits Policy number PEP G2488529A, covering a policy period of March 15, 2010 to March 15, 2011 (the "ACE Policy"). (R.101, Essex Rule 56.1(a)(3) Stmt. Facts ¶ 9; R.6-2, ACE Policy). The ACE Policy had a liability limit of $2 million per occurrence and $5 million in the aggregate, and was excess over the Village's self-insured retention ("SIR") of $150,000. (R.101, Essex Rule 56.1(a)(3) Stmt. Facts ¶¶ 10-12). The ACE Policy contained the following notice condition:

8.    Duties In the Event of **Accident, Occurrence, Wrongful Act, or Claim**

a.    **You** must see to it that:

    i.    **We** are notified in writing as soon as practicable once **You** have knowledge of any **Accident, Occurrence or Wrongful Act** which may reasonably and subsequently give rise to a **Claim** being made against an **Insured** that is likely to result in liability for **Us** under this Policy.

    ii.    You immediately make a written record of specific information about any **Claim** which appears reasonably likely to involve indemnification under this **Policy**, including but not limited to . . . (*excerpted*)

    iii.    **You** notify **Us** in writing as soon as practicable and provide **Us** with all the information required under section ii above.

     b.     **You** must notify **Us** and provide information in the manner specified above of any **Accident, Occurrence, Wrongful Act** or **Claim**, regardless of the coverage or liability, which:

          i.     Results in the establishment of a reserve, or would reasonably require the establishment of a reserve, for **Damages** which equals or exceeds 50% of the **Retained Limit**; or

          ii.     Involves a notice of **Claim** for a **Wrongful Act** which is reasonably likely to equal or exceed 25% of the **Retained Limit**; or

          iii.     Involves any of the following:

               9.     **Bodily injury** resulting from use of a weapon or restraining device by law enforcement.

(R.98, CCMSI Rule 56.1(a)(3) Stmt. Facts ¶ 5; R.6-2, ACE Policy at Section A-8) (emphasis in original).

The ACE Policy also included the following insuring agreement:

     The **Insurer** will indemnify the **Insured** for **Damages** and **Claim Expenses** in excess of the **Retained Limit** for which the **Insured** becomes legally obligated to pay because of a **Claim** first arising out of an **Occurrence** happening during the **Policy Period** in the Coverage Territory for **Bodily Injury, Personal Injury, Advertising Injury,** or **Property Damage** taking place during the **Policy Period**.

     No other obligation to pay any additional sums, perform acts or provide services is covered.

(R.115, Essex Rule 56.1(b)(3)(C) Stmt. Additional Facts ¶ 38; R.6-2, ACE Policy at General Liability Coverage Part, Section A) (emphasis in original).[5]

The ACE Policy also included the following definitions:

     B.     Definitions

          1.     **Accident** means an unintended or unexpected harmful event, including continuous or repeated exposure to substantially the same general harmful conditions which results in **Bodily Injury** or **Property Damages.**

          23.     **Occurrence** means:

---

[5] The ACE Policy further defined "Insured" as the Named Insured (Village of Oak Lawn) and "all of [its] current or former Employees." (R.6-2, ACE Policy at Section B-17).

      a.      With respect to **Bodily Injury** and **Property Damage**, an accidental happening including continuous or repeated exposure to substantially the same general harmful conditions which results in **Bodily Injury** or **Property Damage.**

(R.115, Essex Rule 56.1(b)(3)(C) Stmt. Additional Facts ¶ 40; R.6-2, ACE Policy at Section B-1, B-23) (emphasis in original).

The ACE Policy also included the following exclusions applicable to all Coverage Parts:

    3.      Any **Claim** alleging, based upon, arising out of or attributable to any dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law by an **Insured**; however, the **Insured** shall be reimbursed for the reasonable **Claim Expenses** incurred in such **Claim** if the **Insured** is not found liable for such act, error, omission or violation.

    8.      With respect to **Law Enforcement Activities**, any **Claims, Damages** or **Suits** directly or indirectly arising out of (a) any willful violation, or any violation in which any **Insured** had knowledge of or consented to the violation, of any federal, state or local ordinance, rule, or regulation, or any willful violation of a penal statute;

(R.115, Essex Rule 56.1(b)(3)(C) Stmt. Additional Facts ¶ 39; R.6-2, ACE Policy at Section C-3 and C-8) (emphasis in original).[6]

The ACE Policy's General Lability Coverage Part further excluded:

    2.      **Bodily Injury** or **Property Damage** either expected or intended from the standpoint of the **Insured**.  This exclusion does not apply:

      a.      To **Bodily Injury** resulting from the use of reasonable force to protect persons or property; or
      b.      To **Law Enforcement Activities**, subject to Exclusion 8 of the Common Conditions, Definitions, and Exclusions.

    6.      Any liability arising out of:

      d.      Any violation of civil rights.

---

[6] The ACE Policy further defined "Law Enforcement Activities" as "any of the official activities or operations of Your police force or any other public safety organization, including their agents or employees, which enforces the law and protects persons or property."  (R.6-2, ACE Policy at Section B-20).

> However, this exclusion does not apply to **Law Enforcement Activities**, subject to Exclusion 8 of the Common Conditions, Definitions, and Exclusions.

(R.6-2, ACE Policy at General Liability Coverage Part, Section D-2 and D-6) (emphasis in original).

### B. The Essex Policy

Second, Essex issued to Oak Lawn Excess Liability Policy number XOMW120310, covering a policy period of March 15, 2010 to March 15, 2011 (the "Essex Policy"). (R.101, Essex Rule 56.1(a)(3) Stmt. Facts ¶ 13; R.6-1, Essex Policy). The Essex Policy had a liability limit of $10 million per occurrence and $10 million in the aggregate, and was excess over other underlying policies, including the ACE Policy. (R.6-1, Essex Policy at Declarations Items 3 and 4, and Schedule of Underlying Coverages; *see also* R.115, Essex Rule 56.1(b)(3)(C) Stmt. Additional Facts ¶¶ 33-34). The Essex Policy contained an insuring agreement, which provided that Essex:

> hereby agrees to pay on behalf of the insured that portion of Ultimate Net Loss in excess of the limits of Underlying Insurance as shown in Item 4, of the Declarations, but only up to an amount not exceeding the Company's Limit of Liability as shown in Item 3 of the Declarations. Except for the Terms, Definitions, Conditions and Exclusions of this policy, the coverage provided by this policy shall follow the Insuring Agreements, Definitions, Conditions and Exclusions of the Controlling Underlying Insurance Policy as shown in Item 4 of the Declarations.

(R.101, Essex Rule 56.1(a)(3) Stmt. Facts ¶ 16; R.6-1, Essex Policy at Section A).[7]

The Essex Policy further contained the following condition (the "Defense Condition"):

**Defense.**

> The Company shall not be called upon to assume charge of the investigation, settlement or defense of any claim made, or suit brought, or proceedings instituted against the Insured, but shall have the right and be given the opportunity to be associated in the defense and trial of any such claim, suit or proceeding relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of this policy. If the Company avails itself of such right and opportunity the Company shall do so at its own expense.

---

[7] The Essex Policy does not, itself, set forth any definitions or exclusions relevant to this case.

Court costs and interest, if incurred with the consent of the Company, shall be
borne by the Company and other interested parties in the proportion that each
party's share of the Ultimate Net Loss bears to the total amount of Ultimate Net
Loss sustained by all interested parties.

(R.101, Essex Rule 56.1(a)(3) Stmt. Facts ¶ 18; R.6-1, Essex Policy at Section C-4).

## III.    Second Amended Complaint

In Count VII of the Second Amended Complaint, Essex seeks a declaration that it had no

obligation "to indemnify Oak Lawn, Kirk, or Tenison with respect to the Underlying Action"

because Oak Lawn breached the notice condition of the Essex Policy.  (R.37, Second Am.

Compl. ¶¶ 66-67).  The Court previously determined that CCMSI—on Oak Lawn's behalf—had

provided Essex with timely notice of the Underlying Action.  Accordingly, Oak Lawn did not

breach the notice provision of the Essex Policy.  (R.125, May 31, 2016 Opinion).

In Count VIII of the Second Amended Complaint, Essex seeks a declaration that it "owed

no duty to indemnify Oak Lawn, Kirk or Tenison with respect to the claims against them for the

bodily injuries allegedly suffered by Petrishe"  or with respect to the "emotional distress

allegedly suffered by [the *Petrishe* plaintiffs]."  (R.37, Second Am. Compl. ¶¶ 73, 76).  In

particular, Essex observes that the *Petrishe* plaintiffs alleged that "Kirk acted intentionally when

he shot Petrishe" and that "Kirk and Tenison intended to inflict emotional distress."  (*Id.* ¶¶ 69,

74).  According to Essex, such bodily injuries and related emotional distress were not "caused by

an occurrence, as that term is defined in the ACE Policy."  (*Id.* ¶¶ 72, 75).

In Count IX of the Second Amended Complaint, Essex seeks a declaration that "it owed

no duty to indemnify Oak Lawn, Kirk or Tenison with respect to any damages resulting from

dishonest, fraudulent, criminal or malicious acts, errors or omissions they committed" or from

"any willful violation, or any violation of which they had knowledge or consented, of any

federal, state or local ordinance, rule, or regulation[.]"  (*Id.* ¶¶ 81-82).  In particular, Essex

10

observes that the *Petrishe* plaintiffs alleged that "Kirk and Tenison committed [such dishonest acts] and intentionally violated the law" when they "created false police reports, erased portions of the videotape of the occurrence, misled officers to believe that there was probable cause, and knowingly and maliciously caused criminal charges to be filed." (*Id.* ¶ 77). According to Essex, "the ACE Policy excludes coverage for any claim based on, arising out of or attributable to" any dishonest act. (*Id.* ¶ 78). On both Counts VIII and IX, Essex seeks a declaration that it "is entitled to reimbursement from Oak Lawn for the amounts it expended in settlement of the Underlying Action." (*Id.* ¶¶ 76, 82).

## ANALYSIS

The Village now moves for summary judgment on Counts VIII and IX. Essex opposes the Village's motion and "prays for the entry of an order granting summary judgment in its favor[.]" (R.114, Essex Response Br. at 13). The Court construes Essex's response as a cross-motion for summary judgment on the remaining declaratory judgment counts in its complaint.

## I.    Applicable Legal Principles

Under Illinois law, an insurer's duty to defend "is much broader than its duty to indemnify." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125, 607 N.E.2d 1204 (1992). Illinois courts recognize that the duty to indemnify only arises "if the insured's activity and the resulting loss or damage *actually* fall within the . . . policy's coverage." *Id.* at 127-28 (citations omitted); *see also Rosalind Franklin Univ. of Med. & Sci. v. Lexington Ins. Co.*, 2014 IL App (1st) 113755, ¶ 81, 8 N.E.3d 20, 39 (1st Dist. May 7, 2014). It follows from this principle that, "[w]hen an insured settles an underlying claim, it must show that the settlement was made in reasonable anticipation of liability for an otherwise covered loss." *Rosalind*, 8 N.E.3d at 39; *U.S. Gypsum Co. v. Admiral Ins. Co.*, 268 Ill. App. 3d 598, 625, 643

N.E.2d 1226, 1244 (1st Dist. 1994). Insureds "must therefore show that: (1) they acted reasonably in entering into the settlement; and (2) the claims were otherwise covered by the [insurance] policy." *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, No. 04 C 1342, 2008 WL 4328192, at *7 (N.D. Ill. Sept. 16, 2008), *aff'd in part, rev'd in part and remanded*, 611 F.3d 339 (7th Cir. 2010).

Where an insured "enters into a settlement that disposes of both covered and non-covered claims," moreover, the insurer's duty to indemnify covers the entire settlement only if "the covered claims were 'a primary focus of the litigation.'" *Id.* at 39-40 (quoting *Commonwealth Edison Co. v. Nat'l Union Fire Ins. Co.*, 323 Ill. App. 3d 970, 982, 752 N.E.2d 555 (1st Dist. 2001)); *see also Fed. Ins. Co. v. Binney & Smith, Inc.*, 393 Ill. App. 3d 277, 289, 913 N.E.2d 43, 53-54 (1st Dist. 2009) (recognizing that "an allocation between covered and non-covered claims was unnecessary where the plaintiff demonstrated the primary focus of the underlying litigation was a covered loss and it settled in reasonable anticipation of that litigation"). The issue thus becomes "whether the settlement contained any claims that were covered by [the insurance policies], and, if so, whether such claims were a 'primary focus' of the settlement." *Rosalind*, 8 N.E.3d at 40.

The Seventh Circuit has recognized these principles under Illinois law. *See Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 352 (7th Cir. 2010) ("*Santa's Best Craft I*") (remanding to the district court "to consider the record evidence . . . of whether a primary focus of the underlying action was a covered loss"); *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 483 F. App'x 285, 287 (7th Cir. 2012), *as amended on denial of reh'g and reh'g en banc* (June 29, 2012) ("*Santa's Best Craft II*") ("The district court correctly noted [on remand] that the only record evidence . . . suggests that [underlying plaintiff] had a strong

likelihood of prevailing only on its trademark claim, which is not a claim covered by the St. Paul

policy.  It stands to reason that this claim, and not the [potentially covered] trade dress claim,

was a primary focus of the settlement talks").

In making this "primary focus" determination at the summary judgment stage, courts

look to the pleadings and the record of the underlying litigation.  *See Santa's Best Craft I*, 611

F.3d at 350 ("Both *Gypsum* and *Edison* relied on the record developed in the underlying action,

including allegations in the complaint and evidence presented in the coverage action . . . or the

evidence presented in underlying companion cases that went to trial before settling . . . to

conclude that the settlement resolved litigation primarily focused on covered damage").

Here, Oak Lawn bears the burden of demonstrating that a "primary focus" of the

settlement was a "potentially covered loss."  *Id.* at 352.  Conversely, if Essex can establish "that

the claims were not even potentially covered . . . then [it] is not required to reimburse the

settlement."  *Id.*

## II.     Argument Analysis

### A.      Essex May Litigate This Indemnity Dispute

As an initial matter, Oak Lawn argues that Essex cannot dispute its indemnity obligation,

as a matter of law, because no court or jury has found Oak Lawn liable on any underlying claim.

(R.93, Opening Br. at 7).  The Court rejects this argument.  The case on which Oak Lawn

relies—*Solo Cup Co. v. Federal Insurance* Co., 619 F.2d 1178 (7th Cir. 1980)—makes clear that

"litigation over the independent duty to indemnify will result only: (1) when the insurer has

already defended the action under a reservation of rights, the insured has been found liable, and

the insurer thereafter contests the coverage of the policy; *or* (2) when the policy contains no

defense clause."  *Id.* at 1184 (emphasis added).  Oak Lawn ignores this second standard.  As

Essex recognizes—and Oak Lawn does not dispute—the Defense Condition gave Essex the right, but not the obligation, to associate in the defense of the Underlying Action. There is no primary insurance defense clause applicable to Essex in this case, and thus Essex may litigate this indemnity dispute.

### B. The Settlement Covered Individual and Derivative Claims

Oak Lawn next argues that it need not reimburse Essex for its $1 million settlement payment because, at the time of settlement, there were no claims of intentional conduct (Count VIII) or dishonest conduct (Count IX) pending against Oak Lawn. (R.93, Opening Br. at 3). According to Oak Lawn, Essex participated in the September 23, 2014 settlement conference and knew that the $3 million payment settled claims against Oak Lawn only – *not* claims against Officers Kirk and Tension. Oak Lawn points to the Stipulation to Dismiss, filed November 14, 2014, as "instructive and dispositive" on this point:

> It is hereby stipulated and agreed by and between the parties hereto, by their respective attorneys of record, that all claims against officers Tenison and Kirk are dismissed with prejudice, and that all claims against the Village of Oak Lawn are dismissed pursuant to a settlement agreement that has been executed by the parties, and that each party bears its own costs and attorneys' fees in accordance with the terms of the Release and Settlement Agreement.

(R.92, Village Rule 56.1(a)(3) Stmt. Facts ¶ 11; *see also* R.92-2, Stipulation to Dismiss).

Oak Lawn thus looks to the Stipulation to Dismiss and to the *Petrishe* Complaint to argue that: (1) the settlement was for Oak Lawn liability only (derivative liability and negligent training and supervision); and (2) because there were no allegations of intentional or dishonest conduct on the part of Oak Lawn—as opposed to Officers Kirk and Tension—Essex cannot seek reimbursement, as a matter of law, for its settlement payment under Counts VIII and IX.[8]

---

[8] Oak Lawn further suggests that the only claim *actually* settled was for negligent training and supervision; Oak Lawn did not face liability on derivative theories because "the dismissal with

The Court does not credit Oak Lawn's argument that ACE and Essex paid $3 million in the Underlying Action to resolve Oak Lawn's liability alone, detached from the liability of Officers Kirk and Tension. The Court acknowledges the language of the November 2014 Stipulation to Dismiss, reciting that "all claims against officers Tenison and Kirk are dismissed with prejudice" and that "all claims against the Village of Oak Lawn are dismissed pursuant to a settlement agreement." (R.92-2, Stipulation to Dismiss). The Court cannot, however, ignore the other record evidence before it.

In their Answer dated February 2015, for example, Defendants admitted that "[t]he parties reached a total settlement of $3,000,000 *to satisfy all causes of action contained in the Underlying Action*." (R.49, Answer to Second Am. Compl. at ¶ 54) (emphasis added). In the course of summary judgment briefing, moreover, Oak Lawn simultaneously admitted and denied that, at the September 2014 settlement conference, "the parties agreed to *settle the Underlying Action* for $3,000,000." (*Compare* R.113, CCMSI and Village Rule 56.1(b)(3)(B) Stmt. Facts ¶ 35 ("Admitted") *with* R.121, Village Rule 56.1(b)(3)(C) Reply ¶ 30 ("Denied as stated")) (emphasis added). Indeed, the timing of the dismissal, itself, implies that all claims were dismissed together, following the September 2014 settlement conference. Finally, Oak Lawn does not attempt to reconcile the language of the Stipulation to Dismiss with the language of the Non-Waiver Agreement, which recites that "*all parties* to the Underlying [Action] have agreed to settle the Underlying [Action] *in its entirety* for the amount of $3,000,000." (R.37-A at 1) (emphasis added). The Non-Waiver Agreement—indisputably a condition precedent to Essex's settlement payment—further contemplates continued litigation over "the question of whether

_____

prejudice of the individual officers is dispositive of the fact that the Village cannot be liable for their acts under the doctrine of *respondeat superior* . . . Thus, the settlement could have only applied to covered claims against the Village." (R.120, Oak Lawn Reply Br. at 6-8).

various provisions and exclusions contained in the Essex Policy preclude coverage to the Village *or the officers* for their liability" in the Underlying Action.  (R.37-A at ¶ 3) (emphasis added).

The summary judgment record further calls into question the plausibility of Oak Lawn's suggestion that settlement talks in the Underlying Action focused only on the negligent training and supervision claim against Oak Lawn, rather than on the actual shooting and resulting injuries.  The pleadings in the Underlying Action, for example, clearly request relief arising from the individual officers' allegedly wanton conduct in battering, assaulting, and maliciously prosecuting Petrishe, causing him substantial bodily harm and necessitating significant medical and legal expenses.  (*See generally* R.92-1, Third Am. *Petrishe* Compl.).  Petrishe's settlement demand letter further focuses on (i) the federal excessive force claim against the officers, (ii) the state law battery claim against the officers, (iii) Petrishe's allegations concerning the officers' "clear cover-up" and "complete sham of a criminal investigation," and (iv) Petrishe's resulting damages (including thirteen major surgeries, "prolonged physical and psychological morbidity," severe depression, loss of income, and past and future medical expenses).  (R.115-B, Jan. 2014 Demand Letter at 5-9).  The March 2013 report from defense counsel in the Underlying Action likewise reflects that "the greatest exposure clearly lies with Petrishe's federal claim for excessive force centered on Officer Kirk's decision to employ deadly force . . . That claim, of course, carries with it the prospect of compensatory and punitive damages, as well as Plaintiff's attorney's fees and costs . . . Given the magnitude of that principal claim, the other, corollary claims will be treated as having negligible relative additional value."  (R.115-A, March 20, 2013 Report at 9).

Oak Lawn does not address this record evidence.  Instead, Oak Lawn relies on the Stipulation to Dismiss to define the scope of the Underlying Action's settlement and to argue

that Essex is collaterally estopped from saying that "the claims against the police officers were also part of the settlement agreement or somehow still pended at the time of settlement." (R.120, Oak Lawn Reply Br. at 7). The Court cannot credit Oak Lawn's position on this issue, however, given its own contradictory admissions and the record evidence before the Court.

### C.     The Existence of Covered Claims Under the Essex Policy

In supplemental briefing, Oak Lawn urges the Court to look to the Essex Policy—not the ACE Policy—to determine the existence of a "covered loss." *Santa's Best Craft I*, 611 F.3d at 352. The Essex Policy refers to six separate insurance policies—including the ACE Policy—as providing underlying coverage, without identifying any one as the "Controlling Underlying Insurance Policy." (R.6-1, Essex Policy at Schedule of Underlying Coverages). According to Oak Lawn, this "patent ambiguity" in the Essex Policy means that Essex cannot rely on any ACE Policy provision to avoid its indemnity obligations here. (R.129, Supp. Br. at 2-4) (citing *Archer Daniels Midland Co. v. Burlington Ins. Co.*, 785 F. Supp. 2d 722, 728 (N.D. Ill. 2011) ("if a policy term is ambiguous, a court must construe the policy strictly against the insurer, who drafted the policy, and liberally in favor of coverage for the insured")).

Oak Lawn ignores, however, that where "the parties contest whether the settlement was made in anticipation of covered claims, the burden should be on the insured to prove coverage of the settlement in the first place and then on the insurer to prove the existence of exclusions barring coverage." *Santa's Best Craft I*, 611 F.3d at 352; *cf. Atain Specialty Ins. Co. v. Greer*, No. 15-CV-422-JPG-PMF, 2016 WL 1569892, at *1 (S.D. Ill. Apr. 19, 2016) ("Generally, the insured bears the burden of proving the claim is covered under a policy's grant of coverage, and the insurer bears the burden of proving an exclusion applies") (citing *Addison Ins. Co. v. Fay*, 232 Ill.2d 446, 905 N.E.2d 747 (2009)). Here, the Essex Policy does not specify its own

coverage. Rather, "the coverage provided by this [Essex Policy] shall follow the Insuring Agreements, Definitions, Conditions and Exclusions of the Controlling Underlying Insurance Policy as shown in Item 4 of the Declarations." (R.6-1, Essex Policy at Section A). Oak Lawn fails to identify any underlying coverage—aside from the ACE Policy—applicable to the Court's analysis. Accordingly, if the Court ignores the ACE Policy altogether, Oak Lawn fails to meet its burden "to prove coverage of the settlement in the first place[.]" *Santa's Best Craft I*, 611 F.3d at 352. The Court must, thus, examine coverage by reference to the ACE Policy.

### D. The Existence of Covered Claims Under the ACE Policy

Ultimately, the Court must ask "whether the settlement contained any claims that were covered" by the ACE Policy and, "if so, whether such claims were a 'primary focus' of the settlement." *Rosalind*, 8 N.E.3d at 40; *Santa's Best Craft*, 2008 WL 4328192 at *7.[9] Based on the Seventh Circuit's guidance, the Court looks to (i) the pleadings in the Underlying Action, and (ii) the full record in this action, to conduct this inquiry. *Santa's Best Craft I*, 611 F.3d at 350, 352.

The Court looks, first, to the underlying allegations. Claims 1, 2, 3, 6, 7, 9, 11, 12, and 13 concern the individual officers' conduct in Tasering and shooting Petrishe, resulting in bodily injury and related emotional distress (the "Bodily Injury Claims"). Claims 4, 5, 8, and 10 concern the individual officers' alleged conduct in falsifying police reports and withholding

---

[9] It bears noting that the insured must also show "that the settlement was made in reasonable anticipation of liability[.]" *Rosalind*, 8 N.E.3d at 39. Here, Essex "does not dispute that the Village settled the Underlying Action in reasonable anticipation of liability." (R.114, Essex Response Br. at 5). The Illinois Supreme Court has clarified that, "with respect to the insured's decision to settle, the litmus test must be whether, considering the totality of the circumstances, the insured's decision conformed to the standard of a prudent *uninsured* . . . This involves a commonsense consideration of the totality of facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial." *Guillen ex rel. Guillen v. Potomac Ins. Co. of Illinois*, 203 Ill. 2d 141, 163, 785 N.E.2d 1, 14 (2003) (citation and quotation omitted).

exculpatory evidence, resulting in the malicious prosecution of Petrishe (the "Malicious Prosecution Claims").[10] Claim 14 and 16 assert derivative liability against Oak Lawn, while Claim 15 alleges that "Petrishe was battered, assaulted and maliciously prosecuted" because of Oak Lawn's negligent training and supervision. (*See generally* R.92-1, Third Am. *Petrishe* Compl.).

### 1.     Bodily Injury Claims

Essex argues that the Bodily Injury claims are not covered because they do not arise from an accidental occurrence. Specifically, Essex argues that Officer Kirk reasonably anticipated the results of his decision to shoot Petrishe four times; neither the shooting nor the injury was an "accident." Indeed, the shooting was not an "accident" under the terms of the policy. Moreover, Oak Lawn's counterargument—that Officer Kirk did not enter the premises with the intent to injure Petrishe—does not change this result. *See State Farm Fire & Cas. Co. v. Young*, 2012 IL App (1st) 103736, ¶¶ 26, 30, 968 N.E.2d 759, 765-66 (1st Dist. Apr. 20, 2012) ("The natural and ordinary consequences of an act do not constitute an accident . . . An injury caused by an assault and battery normally is not considered to be accidental, even if the specific injury was not intended") (citation omitted). That finding, however, does not end the coverage inquiry.

The ACE Policy—and by relation the Essex Policy—only provides coverage for specified damages for which the insured becomes legally obligated to pay because of a "Claim first arising out of an Occurrence." (R.6-2, ACE Policy at General Liability Coverage Part,

---

[10] Essex argues that only ten paragraphs in the Third Amended Complaint contain "allegations relevant to the malicious prosecution claim." (R.114, Essex Response Br. at 13). The Court disagrees. The *Petrishe* plaintiffs' due process, conspiracy, and abuse of process claims contain similar allegations concerning the officers' alleged "cover-up" and falsification of evidence resulting in criminal charges. Accordingly, the Court views these claims together.

Section A).[11]  With respect to bodily injury claims, the ACE Policy applies only to "occurrences" and excludes from coverage injuries "either expected or intended from the standpoint of the Insured."  (R.6-2, ACE Policy at General Liability Coverage Part, Section D-2).  "If it seems redundant for an insurance policy to only apply to 'accidents' but then to also contain an exclusion for 'intentional' acts, that is because it is."  *Country Mut. Ins. Co. v. Dahms*, 2016 IL App (1st) 141392, ¶ 61, 2016 WL 2941713 (1st Dist. May 19, 2016).  As the *Dahms* court recently explained, "in order to make this limitation of coverage absolutely clear and inescapable, [insurance companies] include an exclusion for 'intentional injuries' caused by the insured."  *Id.* (citing *Aetna Cas. & Sur. Co. v. Freyer*, 89 Ill. App. 3d 617, 619, 411 N.E.2d 1157, 1159 (1st Dist. 1980)).

Illinois courts are not uniform, however, in their approach to "intentional conduct" coverage issues.  As the *Dahms* court observed, some courts decide the issue on the coverage language, while others decide it on the exclusionary language.  *See id.* at ¶ 62.  In *Dahms*, the choice of approach did not make a difference, because, in that case, "[f]or the same reasons that the allegations in the underlying complaint could potentially allege an accident, the exclusion for intentional acts is not applicable[.]"  *Id.* at ¶ 63.  The *Dahms* court, thus, did "not address the self-defense exception to this exclusion, since the exclusion does not apply in the first instance."  *Id.* at n.2.  Here, however, because the shooting was not an accident, and the "intentional injury" exclusion applies, the Court addresses the exceptions thereto.  *See Pekin Ins. Co. v. Wilson*, 391 Ill. App. 3d 505, 512, 909 N.E.2d 379, 386 (5th Dist. 2009), *aff'd*, 237 Ill. 2d 446, 930 N.E.2d

---

[11]  The ACE Policy further defines "Occurrence" with respect to bodily injury as "an accidental happening," and defines "Accident" as "an unintended and unexpected harmful event."  (*Id.* at Section B-23, B-1).

1011 (2010) ("when we construe Pekin's coverage, it is necessary to consider not only what is excluded but how the self-defense exception applies").

### a. The "Self-Defense" Exception

The ACE Policy contains two exceptions to the "intentional injury" exclusion. The first is for bodily injury "resulting from the use of reasonable force to protect persons or property." (R.6-2, ACE Policy at General Liability Coverage Part, Section D-2). As Oak Lawn observes, this is not a case "where an insured initiated a criminal assault and battery[.]" (R.132, Supp. Reply Br. at 5). Rather, "it was Petrishe—not the officers or the Village—that initiated a criminal act for which he was charged and tried after a finding of probable cause that *he* had attacked the police officers." (*Id.*).

Here, the record reflects that Officer Kirk fired his weapon because he believed that Petrishe was "charging" at him with a knife. The criminal charges filed against Petrishe further indicate that Officer Kirk's use of force was "reasonable." Petrishe's acquittal and the contents of his Malicious Prosecution Claims, however, somewhat call this "reasonableness" into question.[12] Ultimately, the presence of factual disputes concerning the "use of reasonable force" precludes the Court from resolving this issue as a matter of law. *See Pekin*, 391 Ill. App. 3d at 517 (discerning "several factual issues" regarding the insured's reasonable use of force and deferring to the fact finder); *Ins. Corp. of Hanover v. Shelborne Assocs.*, 389 Ill. App. 3d 795, 803, 905 N.E.2d 976, 984 (1st Dist. 2009) ("[w]hen a court is asked to determine whether an insured's conduct is covered under a policy, it must not determine disputed issues of fact which form the basis for the insured's liability in the underlying tort action").

---

[12] On the other hand, defense counsel in the Underlying Action continued to emphasize the existence of "significant liability defenses," even after Petrishe's acquittal. (R.98-1 at CC 00050).

### b.     The "Law Enforcement" Exception

The second exception to the "intentional injury" exclusion is for "Law Enforcement Activities," except for those bodily injuries arising out of a "willful violation" of "any federal, state or local ordinance, rule, or regulation."  (R.6-2, ACE Policy at General Liability Coverage Part, Section D-2; Common Exclusions at Section C-8).  Here, Oak Lawn argues that—under Essex's broad interpretation of "occurrence"—"every action taken by a police officer can be deemed to be 'intentional' and, thus, would never be covered" under municipal insurance contracts.  (R.120, Reply Br. at 10).  While the Court does not endorse Oak Lawn's "broad-strokes" approach, it nonetheless finds that the ACE Policy's "law enforcement" exception applies to provide coverage for the underlying Bodily Injury Claims.

Here, the parties do not dispute that Officer Kirk shot Petrishe during the course of his official law enforcement duties.  There are no allegations or indications, moreover, of a "willful violation" of any law or regulation that would conceivably bar the application of the "law enforcement" exception.[13]  Essex likewise does not identify any pertinent "willful violation."  Officer Kirk's conduct in shooting Petrishe—and the resulting damages—therefore fall within this "law enforcement" exception and, thus, within policy coverage.  *See Outboard Marine*, 154 Ill. 2d at 127-28 (examining the insured's activity and resulting damages); *Rosalind*, 8 N.E.3d at 39, 43 (same); *Santa's Best Craft II*, 483 F. App'x at 286 ("When an insured settles the underlying lawsuit prior to a trial, the insurer need only indemnify the settlement payments made in reasonable anticipation of liability for damages covered under the policy") (citing *Gypsum*).

In reaching this result, the Court construes the ACE Policy as a whole, "with due regard to the risk undertaken, the subject matter that is insured, and the purposes of the entire contract."

---

[13]  The *Petrishe* plaintiffs' allegations concerning falsified police reports and perjured testimony speak to the Malicious Prosecution Claims, not the Bodily Injury Claims.

*Pekin*, 391 Ill. App. 3d at 511 (citation omitted). ACE and the Oak Lawn purposefully chose to include this "law enforcement" exception to the "intentional injury" exclusion. Indeed, ACE contemplated this risk, requiring automatic notice of a claim involving "bodily injury resulting from use of a weapon or restraining device by law enforcement." (R.6-2, ACE Policy at Section A-8(b)(iii)(9)); *contra State Farm Fire & Cas. Co. v. Weber*, 2014 IL App (1st) 130156-U, ¶ 22, 2014 WL 860543 (1st Dist. Mar. 3, 2014) ("It strains credulity to conclude that stabbing an unarmed combatant several times with a knife, even if in self-defense, constitutes behavior of the type the State Farm [homeowners] policy intended to insure against"). The underlying Tasering and shooting—and the related damages—thus fall within policy coverage, notwithstanding their failure to fit neatly within the policy definition of "ocurrence." In so finding, the Court observes that an overly broad interpretation of the "occurrence" coverage language would nullify the two exceptions to the corresponding "intentional injury" exclusion, and, therefore, does not "interpret an insurance policy in such a way that any of its terms are rendered meaningless[.]" *Pekin*, 391 Ill. App. 3d at 512.

For the foregoing reasons, the Court finds that the Bodily Injury Claims are "potentially covered" under the ACE Policy and, therefore, under the Essex Policy. *Santa's Best Craft I*, 611 F.3d at 352. The derivative liability claims arising out of the Bodily Injury Claims are also potentially covered, for the same reasons. *See U.S. Fid. & Guar. Co. v. Open Sesame Child Care Ctr.*, 819 F. Supp. 756, 761 (N.D. Ill. 1993) (applying Illinois law and holding, "Because Reyes' intentional conduct is imputed to Open Sesame on a *respondeat superior* theory, Counts IV and VI do not involve conduct constituting an "occurrence" for purposes of the policy in dispute").

## 2. Malicious Prosecution Claims

The Court next examines the Malicious Prosecution Claims. As an initial matter, the ACE Policy appears to provide coverage for malicious prosecution offenses. (R.6-2, ACE Policy at General Liability Coverage Part, Section A; Section B-23 (defining "Occurrence" with respect to personal injury); Section B-24 (defining "Personal Injury" to cover malicious prosecution offenses)).[14] As Essex observes, however, Petrishe's allegations of falsified evidence (and other misconduct relating to his criminal investigation and prosecution) may fall within the ambit of the "dishonest acts" and "willful violation" exclusions under the ACE Policy. (*Id.* at Section C-3 and C-8). Essex relies, however, on Petrishe's allegations and the policy language, alone. (R.131, Supp. Response Br. at 4-5). Essex offers no other evidence—and the Court finds none in the summary judgment record—bearing on this issue.

Here, because Essex (i) must rely on an exclusionary provision to avoid coverage for the Malicious Prosecution Claims, and (ii) has failed to offer evidence to resolve the policy ambiguity, the Court resolves this issue in Oak Lawn's favor. *See Cardenas v. Twin City Fire Ins. Co.*, No. 13 C 8236, 2014 WL 4699670, at *4 (N.D. Ill. Sept. 19, 2014), *as corrected* (Sept. 24, 2014) ("Where, as here, an insurer relies on an exclusionary provision, it must be clear and free from doubt that the exclusion prevents coverage. Any doubt or ambiguity is resolved in favor of the insured"); *see also Atain Specialty*, 2016 WL 1569892 at *1 (same). For the same reasons, the derivative liability claims arising out of the Malicious Prosecution Claims are also potentially covered. *See Open Sesame*, 819 F. Supp. at 761.

---

[14] Essex initially agreed that Petrishe's malicious prosecution claim (Claim 8) is "potentially covered" under the ACE Policy. (R.114, Essex Response Br. at 11). In making that concession, however, Essex ignored that three other claims—due process, conspiracy, and abuse of process—stem from the same theory of malicious prosecution and, thus, arguably fall within policy coverage. Essex's supplemental response brief did not examine coverage for the Malicious Prosecution Claims, instead focusing on applicable exclusions. (R.131).

### 3. Negligent Training and Supervision

Finally, the Court examines coverage for Petrishe's negligent training and supervision claim against Oak Lawn. This claim sounds in negligence and therefore falls within the policy meaning of "occurrence." Essex's argument to the contrary—that a "volitional act does not become an accident simply because the insured's negligence prompted the act"—does not convince the Court to hold otherwise. (R.114, Response Br. at 10). In this case, even if the officers' intentional conduct took them outside of policy coverage, that fact does not remove their employer, Oak Lawn, from policy protection under a "negligent training and supervision" theory. Illinois courts have refused to "adopt a general rule of law that holds that coverage is not invoked for an employer simply because the policy does not cover the employee for his intentional act." *Am. Family Mut. Ins. Co. v. Enright*, 334 Ill. App. 3d 1026, 1033, 781 N.E.2d 394, 400 (2d Dist. 2002). Essex's cited authorities (R.114, Response Br. at 10-11) do not apply Illinois law. *See Open Sesame*, 819 F. Supp. at 760-61 ("After reviewing the relevant Illinois case law, this court is of the opinion that an Illinois court would decline to follow the district courts of Arkansas and Texas"). The Court therefore holds that the negligent training and supervision claim is "potentially covered" under the policies in this case.

### E. "Primary Focus" of the Underlying Action

As noted above, the Court's inquiry is "whether the settlement contained any claims that were covered" by the ACE Policy and, "if so, whether such claims were a 'primary focus' of the settlement." *Rosalind*, 8 N.E.3d at 40; *Santa's Best Craft*, 2008 WL 4328192 at *7. Because the Court has already determined that all underlying claims were "potentially covered" under the ACE Policy, it need not turn to the "primary focus" analysis. *See Santa's Best Craft I*, 611 F.3d at 352 (noting that such test is useful in cases "in which it is possible that none of the settlement

was attributable to the dismissal of claims for damage covered by the insurer's policy").  Even assuming—without holding—that applicable policy provisions excluded coverage for the Malicious Prosecution Claims, Essex itself argues that the "primary focus" of the settlement was to compensate the *Petrishe* plaintiffs for the Bodily Injury Claims.  (R.131, Supp. Response Br. at 6).  Construing the ACE Policy as a whole, these claims are a "potentially covered loss." *Santa's Best Craft I*, 611 F.3d at 352l; *Pekin*, 391 Ill. App. 3d at 511.  Accordingly, the Court grants summary judgment in favor of Oak Lawn.

## CONCLUSION

For the foregoing reasons, the Court grants Oak Lawn's motion for summary judgment on Counts VIII and IX of the Second Amended Complaint.  (R.90).  In light of this disposition and the previous disposition of Essex's other declaratory judgment count (R.125), the Court dismisses this case with prejudice.


**Dated:**  July 27, 2016                                    ENTERED

                                                                          _____
                                                                          AMY J. ST. EVE
                                                                          United States District Court Judge